**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TONY A. MAVRAKIS, | ) CASE NO. 5:17-cv-02398 |
| Petitioner, | ) |
| | ) JUDGE SOLOMON OLIVER, JR. |
| v. | ) |
| | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| WARDEN, Southern Ohio Correctional Facility | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Respondent. | ) |

Petitioner, Tony A. Mavrakis (hereinafter "Petitioner" or "Mavrakis"), challenges the constitutionality of his conviction in the case of *State v. Mavrakis*, Summit County Court of Common Pleas Case No. CR-2013-10-2872. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 4, 2017. (R. 5, PageID# 55). On January 29, 2018, the Warden for the Southern Ohio Correctional Institute ("Respondent") filed a Motion to Dismiss the petition as time-barred. (R. 12). Petitioner filed his brief in opposition on March 15, 2018. (R. 15-1). This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DISMISSED as time-barred.

### I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Ninth District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Petitioner's conviction as follows:

> {¶ 2} This case involves the actions Mavrakis took after he and Robert G. Fye had a dispute apparently involving the ownership of a car. Mavrakis, who was under a lifetime license suspension, was pulled over while driving the car. As a result, the car was towed. Fye, who was concerned there might "be an issue," sought and received police assistance to retrieve the keys from Mavrakis in order to claim the car from the tow yard.
>
> {¶ 3} Later that day, Mavrakis went to Fye's apartment with a bayonet demanding that the car be returned to him. Fye was not home, but his grandmother and uncle were. Mavrakis beat on the door with the bayonet for approximately two minutes. At some point, the uncle turned the latch to the lock. Mavrakis, then, pushed open the door and entered the apartment with "rage in his eyes."
>
> {¶ 4} He demanded that the grandmother call Fye. She claimed that she was unable to do so because she did not have a phone. Mavrakis was swinging the bayonet and smashing things including a television set, glass coffee table, shelving, pictures and nicknacks. While this was happening, the grandmother secretly passed her cell phone to the uncle who exited the apartment and called 911. The uncle waited in hiding until the police arrived.
>
> {¶ 5} Before the police arrived, Mavrakis left the apartment and called Fye's sister. During that call, Mavrakis threatened that, if Fye wanted his grandmother and uncle to live, he had better bring the car back. He further threatened, "I'm gonna and kill your m* * *f* * *ing dad, too, if he don't bring my m* * *f* * *ing car back."
>
> {¶ 6} Mavrakis proceeded to a muffler shop where Fye's father worked and above which Fye's father lived. Several people, including Fye's sister, were present at the muffler shop. Mavrakis entered through the bay door, slashed a garbage can, and ordered Fye's father to "[c]all Robert [because] I want my car back." Mavrakis further screamed at Fye's father that he would "cut [his] f* * *ing head off if [he didn't] call [his] son." Fye's father grabbed a gun and warned Mavrakis that he would kill him if Mavrakis continued to come after them with the bayonet. Mavrakis backed out of the muffler shop and Fye's father fired a warning shot.

> {¶ 7} After he was arrested, Mavrakis remarked that he would have killed Fye if he had been there. Mavrakis also stated, "I'm going to do some time, but when I get out, I will kill him." At that point, Mavrakis' demeanor was "matter-of-fact" according to the police officer who heard the remarks.
>
> {¶ 8} Mavrakis was charged with aggravated burglary, vandalism, and two counts of aggravated menacing for his actions at the apartment. He was charged with felonious assault and breaking and entering for his conduct at the muffler shop.
>
> {¶ 9} Following a jury trial, Mavrakis was found guilty of the charges arising out of his actions at the apartment. He was found not guilty of the charges relating to the muffler shop. The court ordered a presentence investigation report. According to the report, Mavrakis had prior convictions for, inter alia, felonious assault and aggravated vehicular homicide. The trial court merged the vandalism and aggravated menacing convictions into the aggravated burglary conviction for purposes of sentencing. The court sentenced Mavrakis to seven years in prison for aggravated burglary, which it found to be a mandatory term.

*State v. Mavrakis*, 2015-Ohio-4902, 2015 WL 7572381 (Ohio Ct. App. Nov. 25, 2015).

## II. Procedural History

### A. Conviction

On November 4, 2013, a Summit County Grand Jury issued a six count indictment charging Mavrakis with one count of aggravated burglary in violation of Ohio Revised Code ("O.R.C.") § 2911.11(A)(2), one count of felonious assault in violation of O.R.C. § 2903.11(A)(2), one count of vandalism in violation of O.R.C. § 2909.05(A)(1), one count of breaking and entering in violation of O.R.C. § 2911.13(A), and two counts of aggravated menacing in violation of O.R.C. § 2903.21. (R. 12-1, Exh. 1, PageID# 100-102). Mavrakis pleaded not guilty. (R. 12-1, Exh. 2, PageID# 104).

On June 18, 2014, after a jury trial, Mavrakis was found guilty of aggravated burglary, vandalism, and both counts of aggravated menacing, but not guilty of felonious assault or breaking and entering. (R. 12-1, Exh. 3, PageID# 105-106). On July 9, 2014, the trial court

merged all counts of which Mavrakis was convicted with the aggravated burglary conviction for the purpose of sentencing, and sentenced Mavrakis to a definite and mandatory term of seven years in prison. (R. 12-1, Exh. 4, PageID# 107-108).

**B. Direct Appeal**

On July 30, 2014, Mavrakis, through new counsel, filed a notice of appeal with the state appellate court. (R. 12-1, Exh. 5, PageID# 110). On January 5, 2015, Mavrakis filed a brief raising the following assignments of error:

1. The trial court committed reversible and plain error when it found Mr. Mavrakis guilty of aggravated burglary because the evidence was insufficient to support such findings.

2. Mr. Mavrakis' convictions for aggravated burglary is [sic] against the manifest weight of the evidence.

3. The trial court committed reversible error and plain error by imposing a mandatory sentence.

4. The trial court committed reversible and plain error by considering jury acquitted criminal charges at Mr. Mavrakis' sentencing hearing in violation of his U.S. Constitution's Sixth Amendment rights.

5. The trial court committed reversible and plain error at the sentencing hearing by failing to comply with R.C. 2929.19(B)(2)(F).

6. Mr. Mavrakis was denied his Constitutional right to effective assistance of counsel when his trial counsel failed to argue at the sentencing hearing that the trial court failed to comply with R.C. 2929.19(B)(2)(F).

(R. 12-1, Exh. 6, PageID# 111-144).

On November 25, 2015, the state appellate court affirmed. (R. 12-1, Exh. 8, PageID# 170-186).

On January 6, 2016, Mavrakis, *pro se*, filed a notice of appeal with the Supreme Court of Ohio. (R. 12-1, Exh. 9, PageID# 187-189). In his memorandum in support of jurisdiction, he

raised the following propositions of law:

1. The trial court committed reversible and plain error when it found Mr. Mavrakis guilty of aggravated burglary (A1,2).

2. The courts committed structural, reversible and plain error when it [sic] failed to comply with statute; R.C. 2945.11.

3. Mr. Mavrakis was denied his U.S. Const. right to effective assistance of counsel when trial counsel failed to argue at trial that the courts failed to comply with R.C. 2945.11, (P.O.L. No. 2)

4. The trial court committed structural reversible and plain error by considering jury acquitted criminal charges/testimony at Mr. Mavrakis' sentencing hearing (A-4).

5. Mr. Mavrakis' U.S. Constitutional Sixth Amendment right was violated with prosecutorial misconduct at trial.

(R. 12-1, Exh. 10, PageID# 190-221).

On March 23, 2016, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (Exh. 11, PageID# 222).

**C. Petition for Post-Conviction Relief**

On May 5, 2015, before the state appellate court's decision on direct appeal, Mavrakis, *pro se*, filed a petition for post-conviction relief pursuant to O.R.C. § 2953.21, raising the following claims:

1. Deprived of Sixth Amendment right to confrontation of adverse witness.

    Robert G. Fye, owner of property damaged in case was not cross-examined at my request.

2. Deprived of Sixth Amendment right to counsel because trial counsel was ineffective.

    Statements to CFPD by Robert G. Fye, which resulted in Defendant being investigated and prosecuted of a crime. However, at Defendant's request to trial counsel, before and/or during trial, Robert G. Fye was not confronted.

5

(R. 12-1, Exh. 12, PageID# 223-226).

On May 15, 2015, the court dismissed the petition finding that Mavrakis failed to put forth a cognizable claim of constitutional error. (R. 12-1, Exh. 14, PageID# 230-232).

Mavrakis did not appeal this decision.

**D. Application to Reopen Appeal Pursuant to Ohio App. R. 26(B)**

On October 27, 2016, Mavrakis, *pro se*, filed a delayed application to reopen his appeal pursuant to Ohio App. R. 26(B). (R. 12-1, Exh. 15, PageID# 233-240). As grounds for reopening the appeal, Mavrakis alleged that appellate counsel had provided ineffective assistance on direct appeal and raised the following claims, verbatim:

1. Defendant was deprived of his fifth and fourteenth Amendments, US Constitution, Section 16, article I, Ohio Constitution right of due process when the prosecution knowingly concealed exculpatory/extrinsic/ impeachment evidence in her possession when pursuant to Crim. Rule 16; Prof. Conduct Rule 3.3(b); Prof Cond. R. 3.8(d); Prof. Cond. R. 4.1(b) The prosecution is required to disclose this material evidence.

2. Defendant was deprived of his sixth Amendment US constitution; section 10, Article 1, Ohio Constitution right to effective assistance of counsel when trial Counsel failed to argue an obvious discovery/Crim. R. 16 violation by the prosecution.

(R. 12-1, Exh. 15, PageID# 233-240).

On January 27, 2017, the state appellate court denied the delayed application to reopen the appeal, finding that Mavrakis's petition was filed outside the ninety day deadline and that he failed to demonstrate good cause for his untimeliness. (R. 12-1, Exh. 17, PageID# 275-277).

Mavrakis did not file a timely appeal with the Supreme Court of Ohio.[1]

---

[1] Pursuant to Ohio Sup. Ct. Prac. R. 7.01(A)(4)(c), "[t]he Clerk shall refuse to file motions for delayed appeal involving postconviction relief or App. R. 26(B)."

On June 1, 2017, Mavrakis, *pro se*, filed an untimely application for reconsideration with the state appellate court, asserting that he never received the court's January 27, 2017 decision, which he believes was incorrectly mailed to his former attorney despite proceeding *pro se*. (R. 12-1, Exh. 20, PageID# 327-328).

On July 28, 2017, the state appellate court denied the application for reconsideration, because Mavrakis failed to point to any obvious error in the January 27, 2017 decision. (R. 12-1, Exh. 21, PageID# 329-330).

**D. Federal Habeas Petition**

Petitioner indicates that he placed his Petition in the prison mailing system on November 4, 2017. (R. 5, PageID# 55). The Petition for Writ of Habeas Corpus asserts the following grounds for relief:

> **GROUND ONE**: Defendant was denied effective assistance of counsel in his direct appeal.
>
> **Supporting Facts**: In the direct appeal, appellate counsel failed to raise winning issues. For example: At trial, it was discovered in cross-examination of state witness (Brandon Rutherford, TOP 277-282; Officer James Deeks, TOP 333-340), that several witnesses engaged in illegal and fraudulent conduct related to the proceedings. The prosecution did not disclose this impeachment evidence despite having prior knowledge of its existence. As a result, testimonies from deceptive witnesses was used against me at sentencing, and resulted in additional bias and prejudice. Trial counsel never objected or raised an argument to this *Brady* violation. This violation (and several others) was never raised in the direct appeal.
>
> **GROUND TWO**: The prosecution concealed exculpatory/intrinsic/impeachment evidence, and engaged in other forms of misconduct.
>
> **Supporting Facts**: At trial it was discovered in direct/cross-examination of State witnesses, that the prosecution was aware, prior to trial of her witnesses illegal and fraudulent conduct related to the proceedings when they were withholding information from Officers during the investigation but did not disclose the impeachment evidence to the defense. During closing argument the prosecution was vouching for the credibility of these deceptive witnesses, and alluded to

7

matters outside the record or supported by admissible evidence; including the realm of the jury.

**GROUND THREE**: Ineffective Assistance of Trial Counsel

**Supporting Facts**: Counsel failed to object or argue an obvious discovery rule violation by the prosecution; that the trial court failed to comply with R.C. 2945.11; or that the prosecution was vouching for deceptive witnesses, and invading the realm of the jury, engaging in misconduct during closing argument; at sentencing, the judge relied on acquitted charges/testimony to support her decision making; judge denied the jury transcripts during deliberation; a witness of unsound mind testified without a competency hearing being held for this witness for the State; failed to properly impeach witnesses; failed to move for suppression of deceptive witness statements/testimony.

**GROUND FOUR**: The trial judge did not perform judicial duties without bias or prejudice, nor did she perform judicial duties fairly and impartially.

**Supporting Facts**: The record provides clear and convincing evidence that the prosecution concealed material evidence of her witnesses deceptive/corrupt behavior, and was vouching for their credibility; manifesting bias and prejudice, because at sentencing the judge relied on testimony from these deceptive witnesses and acquitted charges to support her decision making.

**GROUND FIVE**: Insufficient evidence, conviction for agg. burglary against manifest weight of evidence.

**Supporting Facts**: The element of trespass was not met to support a conviction for aggravated burglary. At trial, William "Billy" Fye testified that I "knocked" on the door and he unlocked it (TOP 202). I knocked – Billy got up from the couch – unlocked the door – then sat back down – then I entered. If that does not imply privilege – what does it imply – that I should leave? This issue has been raised, but I can't afford Constitutional Rights.

(R. 5, PageID# 41-64).

### III. Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); *Watkins v. Warden*, No. 17-1388, 2017 WL 4857576 at *1 (6th

Cir. Sept. 28, 2017) ("Actions arising under § 2254 have a one-year statute of limitations.") The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

**A. One-Year Limitation**

In the instant action, Respondent asserts that the petition is time-barred, because Petitioner did not file within the one-year limitations period. (R. 12). As stated above, "the limitation period shall run from the latest of the date on which the judgment became final by the conclusion of direct review *or* the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). In addition, the one-year statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari. *Clay v. United States*, 537 U.S. 522, 528 n.3 (2003); *Anderson v.*

9

*Litscher*, 281 F.3d 672, 675 (7th Cir. 2002); *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001), *cert. denied*, 534 U.S. 924 (2001) (citing cases).

On March 23, 2016, the Ohio Supreme Court issued its decision declining to accept jurisdiction of Mavrakis's appeal, thereby concluding direct state court review. Ninety days later, on June 21, 2016, the time to file certiorari also expired, and the statute of limitations commenced the next day—June 22, 2016. Absent any statutory tolling, Petitioner was required to file his habeas petition no later than June 21, 2017. Mavrakis did not place his petition in the prison mailing system until November 4, 2017—more than four months after the statute of limitations expired.

However, petitions filed more than one year after the conclusion of direct review are not always untimely. The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191, 126 S. Ct. 846, 163 L. Ed. 2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). Although Mavrakis filed a petition for post-conviction relief, that petition was denied on May 15, 2015, long before Mavrakis's conviction became final and, therefore had no tolling effect as the statute of limitations had not yet commenced running.[2]

Petitioner also filed a *delayed* Rule 26(B) application on October 27, 2016, which was denied on January 27, 2017, as untimely with a further finding of no good cause for the untimeliness. (R. 12-1, Exh. 17, PageID # 275-77). Because Mavrakis's Rule 26(B) application

---

[2] Mavrakis did not appeal the denial of his post-conviction petition.

10

was denied as untimely, the Court finds it was not "properly filed" for purposes of § 2244(d)(2). As the Supreme Court has explained, an application is only "properly filed" when its delivered in accordance with the state rules governing filing and accepted by the state court as complying with those rules. *See, e.g., Artuz v. Bennett*, 531 U.S. 4, 8, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000); *Pace v. DiGuglielmo*, 544 U.S. 408, 414-17, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005); *Allen v. Siebert*, 552 U.S. 3, 7, 128 S. Ct. 2, 169 L. Ed. 2d 329 (2007); *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003). These requirements typically relate to the form of the document, the *time limits for its delivery*, the appropriate court where the document should be filed, and/or the filing fee. *Artuz*, 531 U.S. at 8. Further, state courts are the final arbiters of the state's time rules. *See Vroman*, 346 F.3d at 603; *Israfil v. Russell*, 276 F.3d 768, 771, 18 Fed. App'x 278 (6th Cir. 2001). Consequently, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. at 7 (*quoting Pace*, 544 U.S., at 414 (*quoting Carey v. Saffold*, 536 U.S., 214, 226, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002) (alteration in original))). Given that Mavrakis's Rule 26(B) application was not "properly filed," it had no tolling effect.

Therefore, unless equitable tolling is appropriate or the factual predicate of Mavrakis's claim did not become known until a later date, his petition should be dismissed as time-barred.

**B. Factual Predicate**

As indicated above, "a state prisoner ordinarily has one year to file a federal petition for habeas corpus, starting from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *McQuiggin v. Perkins*, 569 U.S. 383, 388, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013) (quoting 28 U.S.C. § (d)(1)(A)). Pursuant to 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence on a

11

later date, resulting in a later filing date "one year from 'the date on which 'the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.'" *Id.* at 388-89 (quoting § 2244(d)(1)(D)). The court, however, does not construe the Petition or brief opposing dismissal as arguing that the factual predicate of his claims were not discoverable until sometime after June 22, 2016—the date the statute of limitations began running.

**C. Equitable Tolling**

The court finds that equitable tolling is not appropriate. "The federal courts sparingly bestow equitable tolling. Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.... Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000) (citations omitted). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

The court finds no grounds to support equitable tolling. It is absolutely clear that Mavrakis was well aware of the deadline for filing his federal habeas petition. In his opposition to the motion to dismiss, he concedes as much. (R. 15-1, PageID# 348).

> Being aware of the 6/21/2017 habeas deadline, and the possibility that relief will most likely come at the federal level, I needed to raise this cognizable issue in the state supreme court to prevent a procedural bar of the particular claim at the federal level.

(R. 15-1, PageID# 348).[3]

Nevertheless, Petitioner asserts that he was hampered in his efforts to meet the habeas deadline because the state appellate court allegedly mailed notice of its January 27, 2017 decision to his former attorney, and that he did not learn of the denial until May 22, 2017.[4] Assuming *arguendo* that Petitioner's representation is accurate and that he was not informed of the state appellate court's decision until May 22, 2017, he nevertheless does not explain why he allowed the statute of limitations deadline to pass without any action on his part when he still had approximately one month to file a federal habeas petition. The prudent course of action would have been to file his petition in a timely manner to avoid being foreclosed from at least raising his exhausted claims, and seeking to hold the federal action in abeyance while he pursued his unexhausted claims.

Finally, even if the court equitably credits him the three months and twenty-five days that elapsed between the date of the state appellate court's January 27, 2017 decision and the date Mavrakis allegedly learned about the denial—May 22, 2017—his petition would still be untimely. Mavrakis's petition was filed four months and fourteen days late. Thus, even if the court were to find that some extraordinary circumstance stood in Petitioner's way, his response cannot be construed as diligent.

---

[3] As early as May 2, 2016, the Office of the Ohio Public Defender informed him that his federal habeas petition deadline was June 21, 2017. (R. 15-3, PageID# 373).

[4] In his motion for reconsideration from the state appellate court's denial of delayed Rule 26(B) application, Mavrakis stated he learned of the January 27, 2017 journal entry on May 22, 2017. (R. 12-1, Exh. 20, PageID# 327).

**D. Actual Innocence**

In *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013), the United States Supreme Court held that actual innocence, if proved, may overcome the expiration of AEDPA's one-year statute of limitations. The Supreme Court noted that a claim of actual innocence is *not a request for equitable tolling* but, rather, a request for an equitable exception to § 2244(d)(1). *Id.* at 1931 (emphasis added). The *McQuiggin* court also reiterated the requisite standard for a credible claim of actual innocence. *Id.* at 1931. The touchstone of the inquiry is whether a petitioner's "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [him].'" *Id.* at 1933 (*quoting Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). However, "tenable actual-innocence gateway pleas are rare." *McQuiggin*, 133 S.Ct. at 1928. In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 298.

In the instant case, Mavrakis has failed to identify any new, reliable evidence demonstrative of actual innocence. To the extent Mavrakis suggests that evidence at trial was insufficient to convict him of some of the crimes, there is nothing "new" about trial testimony. Further, his challenges to the credibility of witnesses and the alleged failure of his counsel to raise certain objections, are essentially challenges to counsel's trial strategy and are not demonstrative of actual innocence. Simply put, Petitioner has not come forward with new, reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or other critical physical evidence that was not presented at trial.

## IV. Conclusion

For the foregoing reasons, it is recommended that Respondent's motion to dismiss (R. 12) be GRANTED and that this matter be DISMISSED as time barred.

/s/ David A. Ruiz
U.S. MAGISTRATE JUDGE

Date: July 26, 2018

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. **28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986).**